UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DARYL JACKSON,

                         Plaintiff,

     vs.                                    9:07-CV-874
                                                 (NAM/GJD)

G. RAMEY, et al.,

                         Defendants.
_____

APPEARANCES:                             OF COUNSEL:

Daryl Jackson
03-A-0777
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953
Plaintiff, *Pro Se*

Office of Attorney General                Roger W. Kinsey, Esq.
The Capitol
Albany, NY 12224
Attorney for Defendants

**Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM DECISION AND ORDER

      In this civil rights complaint, plaintiff alleges various due process violations as the result of a disciplinary hearing held against him. Complaint (Dkt. No. 1). Presently before this court is the defendants' motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6).[1] (Dkt. No. 13). Plaintiff has responded in opposition to defendants' motion. (Dkt. Nos. 17, 18). Plaintiff has also filed a letter regarding an amended complaint. (Dkt. No. 21).

## DISCUSSION

**1.**      <u>**Motion to Dismiss**</u>

---

[1] The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of this motion, and as such, any appeal taken from this order will be to the Court of Appeals for the Second Circuit.

To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)(quoting *inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations omitted). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)(per curiam).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)). Finally, in the case of a motion to dismiss involving a *pro se* plaintiff, the court may look beyond the complaint to plaintiff's opposition papers. *See Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) (citation omitted). In this case, plaintiff has attached various exhibits to the complaint that the court has considered in making its ruling on defendants' motion. Compl. Exs. A-N.

**2.    Facts and Contentions**

Plaintiff states that on February 7, 2004, while he was incarcerated at the Great Meadow

2

Correctional Facility (GMCF), he was involved in an altercation with fellow-inmate, "Lopez." Compl. at 4.  Plaintiff states that Officers Denton and Carlton arrived to stop the fight. *Id.* Plaintiff claims that Inmate Lopez was the aggressor in this fight and was slashing at plaintiff with a weapon. Compl. at 4A.  Plaintiff states that when the officers arrived, they grabbed plaintiff and told him to "get down on the ground." *Id.*  Plaintiff states that he tried to tell the officers that Inmate Lopez was the aggressor, and that he still had a weapon in his hand, but the officer did not give plaintiff time to explain. *Id.*  Plaintiff claims that he did not respond immediately to the officer's orders because he was afraid "to give [his] back to inmate Lopez . . . knowing that he was trying to hurt me . . . ." *Id.*  Plaintiff states that Officers Carlton and Denton became "belligerent and argumentative" with plaintiff as they escorted him from the yard to the hospital. Compl. at 4B.

As a result of the altercation, plaintiff was served with two misbehavior reports: one written by Officer Carlton and the second, by Officer Denton. Compl. 4A-4B & Ex. B, C.  Officer Denton's misbehavior report charges plaintiff with Violent Conduct; Fighting; and Failure to Obey a Direct Order. Compl. Ex. B.  Officer Carlton's misbehavior report charges plaintiff with Failure to Obey an Order; Assault or Attempted Assault on a Staff Member; and Violent Conduct. Compl. Ex. C.  Plaintiff states that the officers did not describe the incident accurately in the misbehavior reports. *Id.* at 4B.  Plaintiff was charged with attempting to assault Officer Carlton. The misbehavior report written by Officer Carlton states that plaintiff "took an aggressive stance" toward the officer, and "took two punches toward his upper body." *Id.* & Ex. C.  Plaintiff claims that the two misbehavior reports were inconsistent with each other and inconsistent with the misbehavior report served on Inmate Lopez. *Id.* Ex. A (Lopez Misbehavior Report).

Plaintiff states that he was afforded a disciplinary hearing, conducted by defendant

3

Ramey. Compl. at 4A-4B.  Plaintiff claims that defendant Ramey denied plaintiff his due process rights at the hearing in various ways.  Plaintiff states that he was not allowed to properly present his defense (1) when plaintiff called Officer Carlton as a witness, but defendant Ramey interrupted plaintiff's questioning; and (2) when defendant Ramey failed to provide plaintiff with either the "Use of Force" or the "Unusual Incident" reports. Compl. at 4B-4C.  Plaintiff claims that defendant Ramey did not give plaintiff a "reasonable explanation" for denying him witnesses. Compl. at 4C & Ex. D.

Plaintiff alleges that his employee assistant, Sgt. LaCroix,[2] had a conflict of interest because he was one of the officers who responded to the incident in the yard.  Plaintiff states that Sgt. LaCroix did not interview any of the witnesses requested by plaintiff. Compl. at 4D.  Plaintiff states that the hearing was not timely commenced according to New York regulations. *Id.* Plaintiff also alleges that defendant Ramey was not impartial. *Id.* at 4B.  Plaintiff was found guilty of the misbehavior and sentenced to six months in the Special Housing Unit and six months recommended loss of good time. Compl. at 4C.

Plaintiff appealed the results of the disciplinary hearing, but the findings were affirmed on administrative appeal. Compl. Ex. F.  Plaintiff then filed an Article 78 proceeding in the Supreme Court of Ulster County.  On October 26, 2004, Supreme Court Justice Vincent Bradley issued a letter-order, dismissing plaintiff's Article 78 proceeding as moot because

> [b]y letter to the Court dated September 20, Deputy Solicitor General Wayne L. Benjamin, Esq. has informed the court that the disciplinary disposition which the petitioner challenges in this proceeding was administratively reversed due to a malfunction of the tape recorder . . . and that all references to the disposition have been expunged from the inmates record.  Accordingly, per Mr. Benjamin's request, the matter must be dismissed as moot as the respondent has granted petitioner all the relief to which he is entitled.

---

[2] Sergeant LaCroix has not been named as a defendant in this case.

4

Pl. Ex. G. On October 5, 2004, after the disciplinary disposition was reversed, plaintiff filed a grievance, requesting back pay[3] for the time that plaintiff spent in SHU as the result of the disciplinary hearing. Pl. Ex. H. The grievance was "Unanimously Accepted" on December 22, 2004, and plaintiff was awarded $ 49.50 in back pay. Pl. Ex. I (Inmate Grievance Resolution Committee response).

The complaint contains three "Causes of Action." Compl. at 5.

1. Defendants violated plaintiff's right to Due Process and Equal Protection, and his right to be free from cruel and unusual punishment when plaintiff was denied documents, denied the opportunity to present a defense, and denied an impartial hearing officer at his disciplinary hearing. Plaintiff alleges that this conduct also violated New York Regulations governing disciplinary hearings.

2. Defendants deprived plaintiff of due process by failing to allow plaintiff to call witnesses at his disciplinary hearing and failing to fully investigate the incident. Plaintiff alleges that the officer assigned to "investigate" the incident was involved in the incident, in violation of New York Rules and Regulations governing disciplinary hearings.

3. Defendants Greene, Selsky, and Goord knew or should have known that a defective hearing tape would constitute an "automatic dismissal," but instead affirmed the disposition.

## 3. **Statute of Limitations**

Defendants first argue that this case should be dismissed based on the statute of limitations. This court does not agree. It is well-settled that the statute of limitations for bringing a section 1983 action is three years, and is borrowed from New York State's residual personal injury statute of limitations. *Owens v. Okure*, 488 U.S. 235, 251 (1989). *See* N.Y. CIV. PRAC. L & R. 241(5). Federal law governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir. 1999)(citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992)), *cert. denied*, 528 U.S. 946 (1999). Generally, under federal law, a

---

[3] At the time of the incident with Inmate Lopez, plaintiff was working in the mess hall at GMCF and was getting an hourly salary of twenty six cents per hour. Pl. Ex. H.

5

cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)).

In this case, defendants argue that plaintiff's cause of action accrued when his disciplinary determination was initially affirmed on April 28, 2004, and because plaintiff did not file this action until August 28, 2007,[4] the action is untimely. Def. Mem. of Law at 2-3. However, plaintiff is challenging the determination of a disciplinary proceeding in which he lost good time. The Second Circuit has held that if the length of a plaintiff's confinement is affected by the result of the disciplinary hearing, the plaintiff's cause of action does not accrue until the guilty determination is **reversed**. *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996). This "favorable termination" rule does not apply when the sanction does not impact upon the length of plaintiff's confinement. *Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir. 1999), *accord*, *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006).

Because this plaintiff suffered a six month recommended loss of good time as a result of the challenged disciplinary hearing, his cause of action would not have accrued until the hearing disposition was reversed.[5] Although there is no exact date for the reversal of the disciplinary hearing, the letter that plaintiff received from the Supreme Court Justice stated that the Deputy Solicitor General informed the Supreme Court of the reversal by letter dated September 20,

---

[4] Although not relevant to this decision, the court would point out that although the court received the complaint on August 28, 2007, plaintiff would have been given the benefit of the "prison mailbox" rule, and the court would have deemed his papers "filed" on the date that plaintiff gave his complaint to prison officials for forwarding to the District Court. *See Houston v. Lack*, 487 U.S. 266 (1988).

[5] If plaintiff had attempted to challenge the hearing disposition in federal court prior to the reversal, the court would have dismissed the action pursuant to *Edwards v. Balisok*, 520 U.S. 641 (1997). In *Edwards*, the Supreme Court held that a plaintiff's section 1983 claim, challenging a disciplinary hearing in which the plaintiff lost good time, was not cognizable until the disciplinary determination was reversed or expunged if a favorable decision on the 1983 action would necessarily invalidate the disciplinary finding. *Id.*

2004.[6] Pl. Ex. C. Plaintiff's complaint in this action was signed on August 8, 2007, and the certificate of plaintiff's inmate account was signed by the facility officer on August 13, 2007. (Dkt. Nos. 1, 2). Thus, plaintiff could have given his complaint to prison officials for mailing anytime after August 13, 2007.

Assuming that plaintiff's complaint is "deemed" filed on August 13, 2007, and the reversal of the disciplinary finding was September 20, 2004, plaintiff's complaint was filed within the three year statute of limitations. Although it is unclear exactly when the reversal of plaintiff's disciplinary hearing occurred, clearly, the defendants' argument is incorrect, and based on all the dates available in the complaint, it appears that plaintiff did timely file the complaint. Thus, this court will *not* order dismissal based on the statute of limitations.

4. **Personal Involvement**

Defendants Glenn Goord, the former Commissioner of the Department of Correctional Services (DOCS) and Gary Greene, the Superintendent of GMCF argue that plaintiff has not properly alleged that they were personally involved in any constitutional violations.

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)(citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the

---

[6] In his subsequent grievance dated October 5, 2004, plaintiff alleged that the date of the reversal was September 20, 2004. Pl. Ex. H.

infraction. *Id*. The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id*. Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id*. *See Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

In this case, the statements regarding defendant Goord are that he is "over all the job assignments" of the rest of the defendants, and that he "should have known" that a defective hearing tape should result in "automatic dismissal." Compl. at 4E, 5. Plaintiff also states that "Glenn Goord is the chief administrator . . . ." *Id.* at 5. The fact that Glenn Goord was[7] the "chief administrator" of DOCS is simply a statement that would support a claim of "*respondeat superior*," however, as stated above *respondeat superior* is not a proper theory of liability. Although plaintiff states that defendant Goord "should have known" that a defective hearing tape would be grounds for an automatic dismissal, there is no indication that defendant Goord was in any way involved in the disciplinary process.

Additionally, because plaintiff is claiming due process violations relating to one hearing, there is no allegation that there was any "unconstitutional policy" about which defendant Goord was aware or that he was in any way "grossly negligent" in managing his employees. The court would point out that the Commissioner of DOCS is not necessarily aware of the disciplinary determinations of every inmate or of plaintiff's in particular. Whether defendant Goord should have or would have known that a defective hearing tape was grounds for an automatic dismissal

---

[7] Defendant Goord is no longer the Commissioner of DOCS. The current Commissioner is Brian Fischer.

8

does not indicate that defendant Goord knew about plaintiff's tape or that defendant Goord had anything to do with plaintiff's case. Thus, this case may be dismissed as to defendant Goord.

Defendant Greene is the Superintendent of GMCF. In the complaint, plaintiff states that he filed a "Discretionary Review Appeal with Gary Greene, Superintendent . . . , and he denied it, he told me that I still had a [sic] appeal in Albany." Compl. at 4D-4E. Plaintiff states that when he brought the issue of the defective hearing tape[8] to defendant Greene's attention, Greene knew that plaintiff would be entitled to another hearing. *Id.* at 4E. Plaintiff also states that defendant Greene should be liable for assigning defendant Ramey, a biased hearing officer. *Id.*

Plaintiff refers to a "discretionary review appeal" before defendant Greene. The regulations provide that "[a]t any time during which a penalty imposed pursuant to a superintendent's hearing is in effect, the superintendent may reduce ***the penalty***." N.Y. CIV. PRAC. L. & R., tit.7, § 254.9 (emphasis added). Plaintiff seems to be alleging that the fact that plaintiff brought the defective tape issue to defendant Greene's attention in a "discretionary appeal," and the fact that defendant Greene assigned the hearing officer, renders Greene personally responsible for any violations that occurred at the hearing.

Plaintiff, himself, alleges that when plaintiff brought the issue to defendant Greene's attention, defendant Greene told plaintiff that he "still" had an appeal in Albany. If plaintiff's appeal were still pending, defendant Greene was only telling plaintiff that he should raise his issue on appeal, even though plaintiff may have been attempting to proceed through the "discretionary review" procedure. Plaintiff states that he then filed a "supplemental" appeal

---

[8] Plaintiff appears to claim that the tape was "defective" because the hearing testimony from February 25, 2004 was taped over the testimony of February 17, 2004. Compl. at 4E. Thus, one day of testimony would have been lost. Later, plaintiff states that the hearing was reversed "due to a malfunction of the tape recorder at the hearing." Compl. at 4E. Justice Bradley's letter to the parties in the Article 78 proceeding states that the hearing was reversed because of a malfunction of the tape recorder. Pl. Ex. G. It is unclear whether the "defective" tape and the malfunctioning tape recorder caused the same problem, but it is not relevant to the findings herein.

before Donald Selsky, who was reviewing the initial appeal.

The appeals of disciplinary hearings are not reviewed by the superintendent of the facility. The regulations provide that appeals of "superintendent's hearing" dispositions are heard by the "commissioner" or his "designee." N.Y. CIV. PRAC. L & R, tit.7, § 254.8. Even assuming that defendant Greene was "made aware" that there was a problem with the hearing tape, and assuming that he "knew" that a defective tape would necessitate a reversal, if he were not involved in the review of the hearing, and if he referred plaintiff to the appropriate procedure, the fact that he did not act on plaintiff's information does not make Greene personally involved in any alleged violation. *See Richardson v. Coughlin*, 101 F. Supp. 2d 127, 132 (W.D.N.Y. 2000).

Finally, in his response to the motion to dismiss, plaintiff continues to argue that defendant Greene is responsible for the alleged constitutional violations because he appointed defendant Ramey as the hearing officer. (Dkt. No. 17 at 5). This action does not render the superintendent of the facility personally involved in a constitutional violation that might later occur at the hearing. *See Odom v. Calero*, 06 Civ. 15527, 2008 U.S. Dist. LEXIS 52408, *20-21 n.1 (S.D.N.Y. July 10, 2008)(to fault a supervisory official for assigning the hearing officer is tantamount to alleging *respondeat superior*). Thus, the complaint may be dismissed as to defendant Greene.

## 5. Due Process

In order to begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty

interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). In *Sandin*, the court rejected a claim that ***thirty***[9] days in segregated confinement was "atypical and significant." *Id.* at 486.

In this case, defendants argue that plaintiff had no protected liberty interest in being free from the confinement that he now challenges. Defendants claim that the length of time that plaintiff spent in SHU is only one factor to consider, and even though the decision of whether confinement is "atypical and significant" generally involves fact finding, the plaintiff has the burden of establishing that the deprivation was "atypical and significant." Def. Mem. of Law at 7-9. Defendants claim that plaintiff has not satisfied his burden, and they are entitled to judgement as a matter of law on this basis.

The Second Circuit has discussed the duration element of the *Sandin* analysis. *Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000). In *Colon*, the court discussed whether it was appropriate to have a "bright line" rule regarding the maximum length of confinement in the Special Housing Unit (SHU) before a liberty interest might be created. *Id.* The court concluded that 305 days in SHU would meet the standard. *Id.* at 231. Although Judge Newman believed that the court should articulate a bright line rule, holding that any SHU confinement less than 180 days would not create a liberty interest, the panel disagreed. *Id.* at 234.

---

[9] Defendants stated that *Sandin* "found that placement in segregated housing for ***sixty*** days did not constitute an atypical hardship." Def. Mem. of Law at 7 (emphasis added). Defendants cited only to the first page of the *Sandin* decision to support this statement, and it is clear from *Sandin* that the issue in that case was ***thirty*** days. The Court stated that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing [Sandin in disciplinary confinement] for ***30 days*** did not work a major disruption in his environment." 515 U.S. at 486 (emphasis added)(footnote omitted).

11

It is true that the court must consider conditions as well as duration,[10] however, sentences of 125 to 288 days are "relatively long" and necessitate "'specific articulation of . . . factual findings" before the court could determine whether the "hardship" was atypical and significant. *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000)(citation omitted). The court in *Colon* also noted that the longest confinement in SHU that did ***not*** meet the atypical requirement was ***101 days***. *Id.* at 231 (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90(2d Cir. 1999)).

In this case, plaintiff states that he spent 175 of the 180 day sentence in SHU. Pl. "Reply" Mem. at 12. (Dkt. No. 17). Plaintiff's time in segregation falls squarely into the "relatively long" sentence found by the Second Circuit to require "factual findings." Plaintiff also states that he was "confined for 23 hours a day in a cell roughly 60 square feet and deprived of most of his personal property, attend [sic] educational and vocational programs, watch television, attend meals, religious services, go to the store, [and] make personal or legal phone calls." *Id.* at 11.

Defendants recognize that whether a plaintiff's confinement satisfies the atypical and significant hardship requirement involves factual determinations, but argue that where the conditions are "undisputed . . . the *Sandin* issue should be resolved as a matter of law." Def. Mem. of Law at 8. Defendants cite *Palmer v. Richards*, 364 F.3d at 64-65 and *Sealey*, 197 F.3d at 585 for this proposition. *Id.* The court would point out that the court in *Palmer* was deciding a motion for summary judgment, and the court in *Sealey* was deciding a motion for judgment as a matter of law after a trial on the merits.

Defendants in this case have brought a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), in which the facts as stated by plaintiff are assumed to be true. *Erickson v. Pardus*, 127

---

[10] *See Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004). Even relatively brief confinements may be atypical and significant if the conditions are particularly harsh. *Id.* (citations omitted).

S. Ct. at 2200. There is absolutely *no* factual development in this case regarding the conditions that plaintiff experienced in SHU for approximately *six months*. The fact that plaintiff has not outlined the conditions in his complaint does *not* mean that the court may just assume on a *motion to dismiss* that the conditions did not render the length of time that plaintiff spent in SHU atypical and significant.[11] Thus, based on the existing record, this court cannot find that plaintiff did not have a liberty interest in being free from 175 days in SHU. Defendants never mention the fact that plaintiff's sentence included the loss of good time, although the court assumes that the reversal of the disciplinary determination resulted in the restoration of any good time.[12]

In *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004), the Second Circuit assumed without deciding that Sira's "six month confinement in the special housing unit imposed an atypical hardship entitling him to due process." The plaintiff in *Sira* suffered an almost identical deprivation as plaintiff in this case. The plaintiff in *Sira* was found guilty of misbehavior and sentenced to six months in SHU, six months loss of good time, and a concurrent loss of

---

[11] *Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000), also cited by defendants, was also decided "as a matter of law" after a trial on the merits. Finally, the court notes that on page 8 of the defendants' memorandum of law, defendants cite *Kalwasinski v. Morse*, 201 F.3d 103, 107 (2d Cir. 1999) for the proposition that it is the plaintiff's burden to "come forward with admissible evidence which compares his confinement to periods of comparable deprivation suffered by other prisoners in the ordinary course of prison administration." Def. Mem. of Law at 8. However, the court in *Kalwasinski* did not state that it was the "plaintiff's burden" on a motion to dismiss. In fact, the cited page of *Kalwasinski* does not mention the "plaintiff's burden" at all. The cited section states that "the district court must consider 'periods of comparable deprivation typically endured by other prisoners in the ordinary course of prison administration, including general population prisoners and those in various forms of administrative and protective custody.'" 201 F.3d at 107 (footnote omitted). In fact, in *Kalwasinski*, the Second Circuit criticized the district court's analysis for stating that it was "fully aware" of the basic conditions in SHU without making specific findings. *Id.*

[12] Since this court finds that it cannot dismiss this action pursuant to a Rule 12(b)(6) motion based on the length of confinement alone, there is no need to consider the effect of the six months loss of good time imposed by the hearing officer as a result of the disciplinary determination. Plaintiff never actually suffered the loss of good time because the determination was reversed, however, if the determination had not been reversed, plaintiff would never have been able to challenge the disciplinary determination due to *Edwards v. Balisok*, 520 U.S. 641 (1997). The Second Circuit has also stated that inmates "are entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit *or* special confinement that imposes an atypical hardship. *Sira v. Morton*, 380 F.3d at 69. *See also Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004)(stating that certain due process protections apply when disciplinary proceedings may lead to the loss of good time credit).

13

privileges. *Id.* at 65. Sira's disciplinary determination was reversed administratively after he had spend the entire six months in SHU, however, "the reversal prevented him from losing good-time credits." *Id.* at 66. When assessing the due process claim, the court in *Sira* assumed, "without deciding, that Sira's six month confinement in the special housing unit imposed an atypical hardship entitling him to due process." *Id.* at 69. Thus, this court will proceed to consider the defendant's other arguments.

The due process protections afforded to inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira*, 380 F.3d at 69 (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004); *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999)). The hearing officer's findings must be supported by "some" or "a modicum" of "reliable evidence." *Sira*, 380 F.2d at 69 (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000); *Luna*, 356 F.3d at 488). This standard is satisfied if there is any evidence in the record, supporting the disciplinary ruling. *Id.*

In this case, plaintiff alleges various deficiencies in the hearing. Plaintiff claims that the hearing officer did not allow plaintiff the opportunity to present a defense and was biased. Compl. ¶ 7, p.5. Plaintiff claims that the hearing officer did not fully investigate the incident and failed to allow plaintiff to call witnesses. *Id.* Finally, plaintiff alleges that defendants' Greene and Selsky "should have known" that a defective hearing tape would result in "automatic dismissal," but did not reverse the hearing determination. *Id.*

Unfortunately, defendants in their motion to dismiss have addressed only the transcript

14

issue, but because they argued that there was no liberty interest and that defendants were entitled to "qualified immunity", defendants did not address any of plaintiff's other claims.[13]

Plaintiff's claim regarding the defective transcript is addressed only to defendants Greene, Selsky, and Goord. The court has already found that the action may be dismissed in its entirety as to defendants Greene and Goord for lack of personal involvement, thus, the court will consider this issue as it relates to defendant Selsky and as an alternative basis for dismissal against defendants Greene and Goord.

Defendants are correct in arguing that plaintiff has no constitutional right to a recording of his disciplinary hearing. *Odom v. Kerns*, 2008 U.S. Dist. LEXIS 47336, *36 (S.D.N.Y. June 18, 2008)(citing *Dixon v. Goord*, 224 F. Supp. 2d 739, 744-45 (S.D.N.Y. 2002); *Britto v. Coughlin*, No. 88-CV-8064, 1989 U.S. Dist. LEXIS 9043 (S.D.N.Y. July 31, 1989)). The recording requirement appears in the New York regulations, governing disciplinary hearings. N.Y. COMP. CODES R. & REGS. tit. 7, § 253.6(b). However, it is well-settled that a violation of state law requirements alone, does not rise to the level of a constitutional violation. *Id.* (citing *Dixon*, 224 F. Supp. 2d at 744-45). *See Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)).

In *Odom*, plaintiff alleged that the defendant "deliberately destroyed" part of his hearing

---

[13] Oddly enough, defendants include an argument that the Eleventh Amendment prevents plaintiff from suing the defendants in their "official capacities." Def. Mem. of Law at 9-11. While this statement is correct, *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991), the caption of the complaint states that "I am suing in their ***individual*** capacities." (Dkt. No. 1)(emphasis added). Defendants state that although they read the caption of the complaint, the document was unclear because he "indicates that he his suing the Defendants as individuals and then refers to the official title of the individual Defendants." Def. Mem. of Law at 10. The court would simply point out that the complaint is a form-complaint, and it requests the "Official Position" of the defendant in the section entitled "Parties." *See e.g.* Compl. ¶ 3. In any event, it is clear that under section 1983, the defendant must be acting "under color of state law," thus, naming the official position of the defendant does not turn this action into an "official capacity" suit.

It now appears that plaintiff is confused because in his response to defendants' motion to dismiss, plaintiff now states that he is suing the defendants in both their individual and official capacities, arguing that plaintiff is permitted to request injunctive relief against defendants in their official capacities. (Dkt. No. 17 at 13). Plaintiff, however, is not requesting injunctive relief of any sort. His prayer for relief asks only for monetary damages. Compl. ¶ 9. As stated above, plaintiff cannot sue defendants in their official capacities, and therefore, this will remain an individual capacity suit.

15

tape. *Id.* at *36. The court held that the fact that plaintiff's hearing tape was incomplete is "insufficient to assert a claim for violation of federal due process protections." *Id.* at *37. The court in *Odom* did find, however, that the intentional "tampering" with the hearing tape could implicate an inmate's due process rights. *Id.* at *37-38.

In this case, plaintiff makes no claim against the hearing officer regarding the tape in question. Plaintiff merely claims that the supervisory defendants should have reversed the determination because they should have known that a defective tape would lead to "automatic reversal." There is no indication that Greene, Selsky, or Goord had anything to do with plaintiff's tape, and there is no allegation of intentional tampering. Thus, the complaint may be dismissed as against defendants Greene and Goord on this additional basis, and to the extent that plaintiff names defendant Selsky in this cause of action, the cause of action may be dismissed as to this defendant. Defendants do not address any of plaintiff's other causes of action, and thus, this court makes no findings regarding plaintiff's additional due process claims.

### 6. **Qualified Immunity**

Defendants' final argument is that the entire complaint should be dismissed because they are entitled to qualified immunity. Qualified immunity protects defendants from liability for acts which do not violate a clearly established constitutional right of which a reasonable defendant would have known. *Scotto v. Almenas*, 143 F.2d 105, 110 (2d Cir. 1998)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 810 (1982)). The inquiry must be directed at the "objective reasonableness" of the defendants' acts. *Farid v. Goord*, 200 F. Supp. 2d 220, 244 (W.D.N.Y. 2002).

In this case, defendants' argument addresses only plaintiff's claim that the incomplete transcript rises to the level of a constitutional violation. Since this court has found that plaintiff's

16

transcript claim has no merit, and defendants have not addressed any of the other claims, it is unnecessary to proceed further with the qualified immunity analysis.

### 7. **Amended Complaint**

The court notes that on June 24, 2008, Magistrate Judge Di Bianco granted plaintiff's June 17, 2008 request to file an amended complaint. (Dkt. No. 19). Judge Di Bianco ordered plaintiff to file the amended complaint by July 24, 2008. On July 10, 2008, Judge Di Bianco extended plaintiff's time to file the amended complaint until August 15, 2008. (Dkt. No. 20). In that order, Judge Di Bianco told plaintiff to submit one copy of the amended complaint for the court's review. *Id.* Plaintiff did *not* file an amended complaint by the appropriate date. Instead, the court received a letter, dated August 17, 2008, stating that plaintiff hoped that he had "done the Amended Complaint correctly" so that the court could tell him who to serve. (Dkt. No. 21). The court did not receive this letter until August 25, 2008.

Judge Di Bianco specifically ordered plaintiff to file one copy of the amended complaint for the court's review by August 15, 2008. Defendants' motion to dismiss was filed on November 14, 2007 and fully briefed, together with two responses by plaintiff (neither of which requested amendment) by *December 18, 2007*. (Dkt. Nos. 13, 17, 18). This court has considered the motion to dismiss because although plaintiff continues to state that he will file an amended complaint, he did not do so by Judge Di Bianco's deadline, and the court has no way of knowing whether plaintiff will ever file the amended complaint.[14]

This court notes that plaintiff stated in his request to file that he wished to add a cause of

---

[14] The court understands that a motion to dismiss is not a "responsive pleading" for purposes of requiring a "motion" to amend under FED. R. CIV. P. 15(a)(1)(A). *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 242-43 (2d Cir. 2007). Although plaintiff has the opportunity to amend as a matter of right before a responsive pleading is filed, the court will review any amended complaint for sufficiency in any event pursuant to 28 U.S.C. § 1915 and 1915A.

17

action and include additional documents in support of his claim. This order does ***not preclude plaintiff from filing an amended complaint.*** This order is merely dismissing one claim that does not rise to the level of a constitutional violation and two of the defendants who had no personal involvement in plaintiff's disciplinary hearing or appeal thereof.

**WHEREFORE**, based on the findings above, it is

**ORDERED** that defendants' motion to dismiss (Dkt. No. 13) is **GRANTED IN PART**, and the complaint is dismissed in its entirety as to defendants **GOORD and GREENE,** and plaintiff's **THIRD CAUSE OF ACTION** is **DISMISSED IN ITS ENTIRETY AS AGAINST ALL DEFENDANTS**, and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 13) is **DENIED IN ALL OTHER RESPECTS.**

Date: September 10, 2008

Norman A. Mordue
Chief United States District Court Judge